Charles J. WEBER, a minor, By his Guardian Ad Litem, Robert H. SANFT, Respondent,

v.

Barbara GOETZKE, Respondent,

Bernard Weber, et al., Appellants,

Willis DENZER, et al., Respondents,

Raymond E. Goetzke, Defendant and Third Party Plaintiff, Respondent,

v.

Judith WEBER and Carl Weber, Respondents.

No. C9-84-1480.

Court of Appeals of Minnesota.

July 23, 1985.

Review Denied Sept. 16, 1985.

Jon R. Duckstad, St. Paul, for Charles J. Weber.

Rolf E. Gilbertson, Seth M. Colton, St. Paul, for Bernard Weber et al.

Robert M. Frazee, Minneapolis, for Willis Denzer et al.

Thomas O. Albers, Bloomington, for Barbara Goetzke and Raymond E. Goetzke.

Richard H. Knutson, St. Paul, for Judith Weber and Carl Weber. ·

Heard, considered and decided by SEDG-WICK, P.J., and WOZNIAK and RANDALL, JJ.

### OPINION

RANDALL, Judge.

Bernard and Sharon Weber appeal the trial court's finding that they and other members of their family are liable for injuries to Charles Weber, their nephew, based on the theory of joint venture and joint enterprise liability. They argue that the family activities, as a matter of law, do not rise to the level of either joint venture or joint enterprise. We reverse.

### FACTS

Charles Weber, a minor, was injured when a paint can which Raymond Goetzke had placed in a fire pit exploded, splattering him with hot paint. His medical expenses were stipulated to be $9,631.18. The injury occurred when Charles, his parents, his aunt and uncle, Barbara and Raymond Goetzke, and his aunt and uncle Margaret and Willis Denzer were cleaning up a parcel of lake property they jointly owned with Bernard and Sharon Weber, who are also Charles' uncle and aunt.

The property had been acquired as a gift from Charles's grandfather, and was used

by all the parties as recreational property. The parties had previously decided to sell one section of the property. Bernard and Sharon Weber had been involved in the decision to sell, but were not on the property at the time of the accident.

On the advice of the real estate agent handling the listing, the parties who were at the lake property that weekend decided to spend a morning cleaning and fixing up the property to be sold in hopes of increasing its value. Raymond Goetzke gathered trash in a wheelbarrow and dumped it in a fire pit located on the property and used by the parties as a recreational fire pit. The trash contained paint cans, one of which exploded, severely burning Charles.

Charles brought this action against respondent Raymond Goetzke for his negligence in causing plaintiff's personal injuries. Goetzke impleaded respondents Carl and Judith Weber, Margaret and Willis Denzer, and appellants Sharon and Bernard Weber, seeking contribution or indemnity based on their vicarious liability as participants in a joint enterprise or joint venture.

The complaint was amended to include alternative claims for joint enterprise and joint venture liability against the impleaded parties, and they all, in turn, served cross-claims against each other.

Following a trial, the jury found by special verdict that Goetzke was negligent, that his negligence was the sole cause of Charles Weber's injuries and the jury awarded Charles Weber $67,000 in damages and $11,000 in medical specials. However, the jury also found the rest of the defendants liable as participants in both a joint venture and a joint enterprise.

The trial court entered judgment jointly against all defendants in the amount of $78,000. Bernard and Sharon Weber moved for a new trial or for a change in the special verdict interrogatory answers to establish that there was no joint liability or, in the alternative, for amended findings establishing that Carl and Judith Weber were entitled to judgment against the other defendants for the medical expenses they had paid and that all other defendants were

entitled to indemnity from defendant Goetzke.

Appellant Raymond Goetzke moved for a new trial based on testimony admitted at trial about his insurance coverage. In response to the question whether she had any conversations after the accident with Raymond Goetzke, Judith Weber responded that she had asked Goetzke why he had not yet submitted a claim for the accident to his insurance carrier. Goetzke was allowed a limited right to testify that he had filed a claim. The trial court later gave the jury a curative instruction with approval of Goetzke's counsel.

All motions were denied. Bernard and Sharon Weber appealed, claiming the trial court erred in submitting the issues of joint venture and joint enterprise to the jury.

**ISSUES**

1. Did the trial court err in submitting the issues of joint venture and joint enterprise liability to the jury?

2. Did the trial court err in refusing to grant a new trial?

**ANALYSIS**

**I.**

*Joint Venture*

The central issue on appeal is whether Bernard and Sharon Weber, Barbara and Raymond Goetzke, Willis and Margaret Denzer, and Judith and Carl Weber can collectively be held liable for Charles Webers' injuries based on joint venture or joint enterprise theory.

■ A necessary element of a joint venture is the existence of a business relationship. *Olson v. Ische*, 343 N.W.2d 284, 288 (Minn.1984), *Delgado v. Lohmar*, 289 N.W.2d 479, 482 n. 2 (Minn.1979). Under these facts, a joint cleanup prior to selling a parcel of family-owned land did not constitute a business relationship.

■ The fact that profit is involved does not transform a family activity into a

business transaction. The Weber children and spouses are not a family engaged in the practice of buying and selling real estate for a profit. This isolated activity did not constitute a business, the parties were not involved in a joint venture, and its members cannot be held vicariously liable for Charles Webers' injuries under joint venture theory.

*Joint Enterprise*

■■■ The Goetzkes next claim they and the other Weber siblings and in-laws were engaged in a joint enterprise to sell the lake property. A business relationship is not necessary for joint enterprise. *Olson v. Ische,* 343 N.W.2d at 288, *Delgado v. Lohmar,* 289 N.W.2d at 489, n. 2. The elements of a joint enterprise are (1) mutual understanding for a common purpose and (2) a right to a voice in the direction and control of the means used to carry out the common purpose. *Olson v. Ische,* 343 N.W.2d at 288, *Delgado v. Lohmar,* 289 N.W.2d at 482. Actual physical control is not necessary, only the legal right to control is required. *Delgado* at 482.

Prosser characterizes joint enterprise as "something like a partnership, for a more limited purpose, for a more limited time." W. Prosser, Handbook on the Law of Torts, § 73 (4th ed. 1971).

■■ A "mutual understanding," not a contractual relationship, is the first element of a joint enterprise. Although the parties did have an understanding that they would sell the land and share the proceeds, their voluntary participation in cleanup activities does not bring their activities within the definition of joint enterprise.

■■■ Respondents attempt to construct express and implied contracts to show the parties had a common purpose. Neither is present. An implied contract may be found where one party has been unjustly enriched. *See e.g. First Nat. Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 504 (Minn.1981). There is no unjust enrichment here. Other requirements for implied

contract are mutual assent and acceptance of benefits. *Bergstedt, Wahlberg, Berquist, and Rothchild,* 302 Minn. 476, 479, 225 N.W.2d 261, 263 (1975).

■■■ Although mutual assent to clean up the property was given by the parties and they shared equally the profits of the sale, participation in cleanup was not a condition precedent to obtaining a share of the profit. The parties gratuitously performed cleanup, expected no additional pay, did not expect a larger share of the proceeds for participating in cleanup, and would have received no less had they not participated.

The parties had no express contract for sale of the property containing as a term the requirement that the parties clean up the lot prior to sale. Assuming *arguendo* the parties had a contract to sell the land, cleanup, because not specifically bargained for with the buyer, was an act unsupported by consideration. Consideration requires the voluntary assumption of an obligation by one party on condition of an act or forebearance by the other. *Cady v. Coleman,* 315 N.W.2d 593, 596 (Minn.1982) (Citations omitted).

■■■ The decision to clean the land was made after the decision to sell the land and share in the profits. Even if the agreement to sell the lake lot rises to the level of a contract, and we do not find that it does, the decision to clean the land was separate from the sale, entirely voluntary, unsupported by consideration, and thus not a true joint enterprise.

In a case not involving an automobile collision, the court reached the same result. Three friends were hunting together when one accidently shot the owner of the land on which they were hunting. Citing the lack of legal control, the court noted:

> In a case involving a hunting accident, the important factor is whether the hunters have an equal right to control the gun or guns used. In the instant case, each hunter had and used his own gun. Although Daniels stated that he would feel free to warn any member of his

party who was in a dangerous situation not to shoot and that he hoped the other members of his party would instruct him not to shoot in a similar situation, the shotgun of each defendant was at all times under the independent care, custody, and control of its owner. Each hunter was confronted with his own split-second decisions as to whether or not to shoot. Each man had a different line of fire and a different line of sight. It was impossible for any one of the party to control the use of the gun of another.

This group of friends was engaged in recreational activity on a gratuitous and voluntary basis, there was no sharing of equipment or expenses, and each person had control of his own gun. Under these circumstances, we hold that the defendants were not engaged in a joint enterprise.

*Delgado v. Lohmar*, 289 N.W.2d at 483.

As in *Delgado*, here the parties independently carried out cleanup activities, no one person controlled the acts of any other, either physically or legally. The nature of the relationship of the parties is important both to the *Delgado* court and here. The Weber family members and spouses were engaged as a family in cleanup activities on a gratuitous and voluntary basis. Although they shared in the right to equal portions of the profit, they were not directly paid for their cleanup work, did not directly control each other nor submit to the control of each other, and did not forfeit any right to sale proceeds if absent.

Respondents present several arguments in support of finding legal control: agreement of the parties to clean up the land, implied contract to make a profitable sale, the right to share equally in the profits of the sale. Although each of these arguments is relevant to a showing of common purpose, they do not show how that common purpose gives each the right to legally control the others' activities.

■ The right to legal control means that all involved in the undertaking must have a joint or mutual right to direct the agency used to carry out the common

purpose. (Citations omitted). *Pierson v. Edstrom*, 286 Minn. 164, 167, 174 N.W.2d 712, 714 (1970). Under these facts, the legal control discussed in *Pierson* does not exist. By its terms "legal control" implies an enforceable right to control the movements of another. We hold as a matter of law that such right does not exist here. As Prosser notes:

> The contractual agreement by which he is said to enter into such an arrangement is all too obviously a fiction * * * and upon this is erected a second fiction * * a "right of control" * * * and on this is erected a third fiction * * * [agency] * *. This top heavy structure tends to fall of its own weight.

W. Prosser, *Handbook of the Law of Torts*, § 73 (4th ed. 1971)

Finally, Prosser notes policy considerations against joint enterprise: "[the risk is] placed on an enterprise which [is] not commercial and [is a] matter of friendly cooperation and accommodation where there is not the same reason for placing all risks on the enterprise itself." *Id.*

■ Whether joint enterprise exists is a question of law. *Olson v. Ische*, 343 N.W.2d at 289, *Delgado v. Lohmar*, 289 N.W.2d at 483. Under the facts of this case the trial court should have found that the activities of the parties, as a matter of law, did not rise to the level of joint enterprise. Accordingly, the trial court judge erred in submitting the issue to the jury. The same holds true for joint venture. The trial court, under these facts, was free to submit to the jury the negligence of any one of the eight individuals involved if there was any act indicating that any one individual caused Charles Weber's injuries.

■ Generally, a jury verdict must be manifestly and palpably contrary to the evidence before the appellate court will overturn the verdict. *Fallin v. Maplewood-North St. Paul Dist.*, 348 N.W.2d 811, 813 (Minn.Ct.App.1984) (Citations omitted). It will not be overturned if evidence

reasonably tends to support it. *Coughlin v. LaBounty,* 354 N.W.2d 48, 50 (Minn.Ct. App.1984) (Citations omitted). Here the evidence did not reasonably support findings of joint venture and joint enterprise.

## II.

 Appellants Goetzke ask the court to remand for new trial based on error in allowing the introduction of statements about their insurance coverage. Goetzke was allowed a limited right to respond and the jury was given a curative instruction. The granting of a new trial rests in the discretion of the trial court and the trial court's decision will be reversed only for a clear abuse of discretion. *Ogema v. Bevins,* 341 N.W.2d 298, 299 (Minn.Ct.App. 1983), *Connolly v. Nicollet Hotel,* 258 Minn. 405, 419, 104 N.W.2d 721, 731 (1960). We do not find error in the trial court's handling of the insurance issue.

Because we hold that the parties cannot be held vicariously liable for the tort committed by Raymond Goetzke, we find it unnecessary to reach the issues of contribution, indemnity, and payment of medical expenses for those parties released from liability by this opinion. Since they cannot be held vicariously liable, Raymond Goetzke is alone responsible for payment of the damages and medical expenses awarded to Charles Weber under the jury's verdict.

## DECISION

The trial court erred in submitting the issues of joint venture and joint enterprise liability to the jury where the activities of family members as a matter of law did not rise to the level of joint venture or joint enterprise.

The trial court did not err in refusing to grant a new trial. The decision to grant a new trial rests in the sound discretion of the trial court.

Reversed.