Richard **BUCK** as trustee for the heirs and next-of-kin of Rhonda Sue Buck, Deceased, Appellant,

v.

Harrison L. **FREEMAN**, d/b/a Freeman Fireworks Forever, et al., Kathleen Billington, Minnesota Workers' Compensation Assigned Risk Plan, et al., Respondents.

No. C9–00–910.

Court of Appeals of Minnesota.

Dec. 12, 2000.

Mark M. Walbran, Walbran, Furness & Leuning, Owatonna, MN, for appellant.

Paul A. Banker, Robert W. Kettering, Jr., Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for respondents Freeman, et al.

Peter C. Sandberg, Dunlap & Seeger, Rochester, MN, for respondent Billington.

Charles E. Lundberg, Todd J. Thun, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, MN, for respondents Minnesota Workers' Compensation Assigned Risk Plan, et al.

Considered and decided by KALITOWSKI, Presiding Judge, AMUNDSON, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge

Rhonda Sue Buck, an employee of Freeman Fireworks Forever, was killed in an explosion at work. The trustee of her heirs brought a negligence action against the Minnesota Workers' Compensation Assigned Risk Plan, contending it breached its statutory duty to conduct on-site safety inspections, but the district court ruled the plan was immune from suit under Minn. Stat. § 176.031 (1998). Appellant also sued respondent-owner, contending that as a working employer, he was subject to liability as a grossly negligent coemployee under Minn. Stat § 176.061, subd. 5 (1998). The district court granted summary judgment for Freeman on this claim, holding that the employer may not be found to be a grossly negligent coemployee. This is appeal is taken from the final partial judgment. We affirm.

## FACTS

Decedent Rhonda Sue Buck worked for respondent Harrison L. Freeman, doing business as Freeman Fireworks Forever. She was Freeman's only employee. On April 19, 1996, Freeman mixed flash powder, which decedent then drew from a metal bucket with a metal-handled pot to place into shell casings. An explosion occurred, resulting in Buck's death. Although the cause of the explosion is not certain, it may have been the result of friction from the metal barrel and metal-handled pot or from static electricity generated by decedent's snowsuit.

As trustee for the heirs and next-of-kin of decedent, appellant Richard Buck sued decedent's former employer alleging that Freeman was liable as a grossly negligent coemployee. The district court granted Freeman's motion for summary judgment,

holding that the workers' compensation act (WCA) was the exclusive remedy against the employer. Buck also sued Freeman's compensation insurer, the Minnesota Workers' Compensation Assigned Risk Plan and its related insurers and administrators (MWCARP or insurers) in negligence based on the failure to inspect Freeman's premises as required by Minn.Stat. § 79.253, subd. 2 (1998). The district court dismissed the claim for lack of subject-matter jurisdiction because the insurers were immune from suit under Minn. Stat. § 176.031 (1998). The district court further held that Minn.Stat. § 79.253, subd. 2, does not create a private cause of action for failure to inspect. An amended judgment was entered April 4, 2000, pursuant to a stipulation under Minn. R. Civ. P. 54.02.

## ISSUES

1. Is an employer who performs workplace duties subject to liability as a coemployee, or does the workers' compensation act provide the exclusive remedy for work-related injuries and fatalities?

2. Are compensation insurers subject to negligence liability or are they protected by the exclusive remedy provisions of Minn.Stat. § 176.031 (1998)?

3. Does Minn.Stat. § 79.253, subd. 2 (1998), create a private cause of action against compensation insurers?

## ANALYSIS

On appeal from summary judgment, we review the record to determine whether there are any genuine issues of material fact and whether the district court erred in applying the law. *State by*

*Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). We "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

### 1. Liability of Employer as Grossly Negligent Coemployee

The exclusive remedy of employees against an employer for injuries sustained in workplace accidents is found within the WCA. Minn.Stat. § 176.031 (1998).[1] This statute guaranteed decedent compensation for any injuries sustained at work and, in exchange, she forfeited her common law rights against Freeman. *See Wicken v. Morris,* 527 N.W.2d 95, 99 (Minn.1995) (describing the reciprocal concessions made by employer and employees under the WCA). On the other hand, an employee may be held liable for the personal injuries of a coemployee if the injury is a result of gross negligence or intentional act.[2] Minn.Stat. § 176.061, subd. 5(c) (1998); *Dawley v. Thisius,* 304 Minn. 453, 456, 231 N.W.2d 555, 557 (1975).

Buck argues that "immunity attaches to conduct not status," and, therefore, in participating in the activities of a coemployee, Freeman is subject to liability in the same manner as a coemployee. No statute or caselaw directly supports the notion that active performance of duties in the workplace results in abrogation of the employer's immunity under the exclusive remedy provision of the WCA. *Cf. Dawley,* 304 Minn. at 456, 231 N.W.2d at 557–58 (establishing that in limited circumstances an employee may be held liable for gross negligence against a coemployee); *Wicken,* 527 N.W.2d at 98–99 (manager may be

1. Minn.Stat. § 176.031 (1998) provides:

The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee * * * entitled to recover damages on account of such injury or death.

2. Minn.Stat. § 176.061, subd. 5(c) (1998), describes liability as follows:

[a] coemployee working for the same employer is not liable for a personal injury

incurred by another employee unless the injury resulted from the gross negligence of the coemployee or was intentionally inflicted by the coemployee.

There is also an exception to the exclusivity provision for an employer's intentional torts, where an employer's intentional torts are excepted from the exclusivity provision. *Boek v. Wong Hing,* 180 Minn. 470, 471–72, 231 N.W. 233, 234 (1930). There are no allegations that Freeman's acts were intentional.

liable as coemployee); *Stelling v. Hanson Silo Co.*, 563 N.W.2d 286, 290 (Minn.App. 1997) (finding a shareholder of a corporation liable as a coemployee). We will not re-interpret the WCA to narrow employer immunity protections.[3]

We conclude the district court did not err in holding that Freeman, as decedent's employer, is immune on the negligence claim and is entitled to the protection of the exclusive remedy provisions of the WCA.

## 2. Dismissal of Action Against MWCARP

### A. Insurer's Immunity under Workers' Compensation Act

 Buck contends that the district court erred in dismissing his claim against MWCARP. The district court determined that it had no subject-matter jurisdiction over the claim because "compensation insurers would be entitled to immunity [under the WCA] since they are subject to the burdens" of the act. If the WCA provides the employee's exclusive remedy, the district court has no jurisdiction. *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 833 (Minn.1995). Whether the compensation insurers fall under the exclusive remedy provisions of WCA is a question of statutory interpretation, which is reviewed de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

 This court has never considered whether the immunity provision of the WCA extends to the acts of an insurer. The plain language of the statute does not include insurers as employers.[4] But in *Konken v. Oakland Farmers Elevator Co.*, 425 N.W.2d 302 (Minn.App.1988), *review denied* (Minn. Aug. 24, 1988), in considering whether a third party was entitled to the protection of the exclusivity provisions of the WCA, this court noted that

[a] third person, *other than the employer's compensation insurer*, is subject to no burdens of the act and consequently, under the scheme of reciprocity, is entitled to no benefits of the act.

*Id.* at 305 (quoting *Modjeski v. Atwell, Vogel & Sterling, Inc.*, 309 F.Supp. 119, 121 (D.Minn.1969) (emphasis added)). Furthermore, in *Modjeski*, the court noted that

[t]here is within the statute a clear pattern to create an inseparable identity between the employer and his insurer insofar as compensation and medical benefits for the injured party are concerned.

*Modjeski*, 309 F.Supp. at 122. In coming to its conclusion, the court in *Modjeski* relied on several provisions of the WCA in which insurers and employers are treated similarly. *Id.* at 121–22. Like the courts in *Modjeski* and *Konken*, we conclude that a reasonable reading of the statute results in compensation insurers being protected by the exclusive remedy provisions of the WCA. *See Heaslip v. Freeman*, 511 N.W.2d 21, 22 (Minn.App.1994), *review de-*

---

3. In addition, Buck contends that the district court erred by concluding that the form of Freeman's business was not at issue and that "Freeman so dominated the business to be considered the 'employer' no matter what the form of business organization." If Freeman organized his business as a corporation, Buck argues, the corporate entity would be the employer and Freeman would "clearly be a co-employee" subject to liability. Minn.Stat. § 176.061, subd. 5(c). But, "the party resisting summary judgment must do more than rest on mere averments." *DLH Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997). A genuine issue for trial must be established by substantial evidence. *Id.* at 69–70. In opposing

summary judgment, Buck failed to present evidence that Freeman Fireworks Forever had filed for or received corporate status. As the district court noted, there is no evidence that Freeman's business adopted a corporate name as required by Minn.Stat. § 302A.115, subd. 1(b) (1998).

4. Minn.Stat. § 176.011, subd. 10 (1998), defines an employer as

any person who employs another to perform a service for hire; and includes corporation, partnership, limited liability company, association, group of persons, state, county, town, city, school district, or governmental subdivision.

*nied* (Minn. Feb. 24, 1994) (in statutory interpretation, a reviewing court must "look first to the specific statutory language and be guided by its natural and most obvious meaning").

Because insurers are subject to the burdens of the WCA, they are also entitled to the benefits of the exclusive remedy provisions of the WCA. Therefore, the district court did not err in dismissing Buck's action against the insurers for lack of subject-matter jurisdiction.

## B. Private Cause of Action under Minn.Stat. § 79.253, subd. 2 (1998)

Buck contends, in the alternative, that the district court erred in dismissing the action against the MWCARP because Minn.Stat. § 79 .253, subd. 2, establishes a duty of inspection and creates a private cause of action not barred by the exclusivity provisions of the WCA.[5] As a result, Buck argues, the failure to inspect Freeman's premises gives rise to a negligence claim.[6]

■ Statutes do not give rise to a civil cause of action unless the liability is explicit or clearly implicated. *Semrad v. Edina Realty, Inc.,* 493 N.W.2d 528, 532 (Minn. 1992). The plain language of Minn.Stat. § 79.253, subd. 2, does not explicitly create a cause of action and, therefore, we must decide if one is clearly implied.

■■ There is generally a reluctance on the part of the courts to imply a private

right of action. *Hoppe by Dykema v. Kandiyohi County,* 543 N.W.2d 635, 638 (Minn.1996); *Haage v. Steies,* 555 N.W.2d 7, 8 (Minn.App.1996) ("Principles of judicial restraint weigh against recognizing statutory rights of action that are not clearly expressed or implied by the legislation."). In determining whether a private cause of action may be implied, this court must consider

> (1) whether appellant belongs to the class for whose benefit the statute was enacted; (2) whether the legislature indicated an intent to create or deny a remedy; and (3) whether implying a remedy would be consistent with the underlying purpose of the [statute].

*Flour Exch. Bldg. Corp. v. State,* 524 N.W.2d 496, 499 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995).

■ "The purpose of the assigned risk plan is to provide workers' compensation coverage to employers rejected by a licensed insurance company." Minn.Stat. § 79.252, subd. 1 (1998). The benefited class, therefore, is employers rejected by the voluntary insurance market. The purpose of the statute is not to establish safety standards or to protect employees from harm, but rather to provide them with compensation insurance, should an accident occur. Implying a cause of action based upon a failure to inspect runs counter to the statute's purposes.[7]

---

5. Minn.Stat. § 79.253, subd. 2, states in relevant part:
 The assigned risk plan shall, through persons under contract with the plan, perform on-site surveys of employers insured by the assigned risk plan and recommend practices and equipment to employers designed to reduce the risk of injury to employees.

6. The assigned risk plan is designed for employers otherwise unable to secure coverage in the voluntary insurance market. The statute mandates that the assigned risk plan conduct on-site inspections and recommend safe practices. *Id.* The statute also includes a priority schedule for inspections. Under the schedule, Freeman's facility had not been inspected by the time of the accident.

7. Buck also asserts that when a statute imposes a duty of protection, and one neglects that duty, common law negligence applies and liability may be imposed. *Osborne v. McMasters,* 40 Minn. 103, 104–05, 41 N.W. 543, 543–44 (1889). In other words, to violate the statute is to deviate from the standard of care owed to another. *Id.* In finding the nonperformance of a legal duty actionable, the court in *Osborne* remarked that the "object [of the statute] is to protect the public against" this type of harm. *Id.* at 104, 41 N.W. at 543. But here, the object of this statute is not to protect employees, but rather, to provide insurance to employers that could otherwise not obtain it.

Here, the legislature did not expressly or clearly imply a private cause of action. An implied remedy would be inconsistent with the purpose of the statute. We, therefore, hold that the district court did not err in finding that no cause of action exists under Minn.Stat. § 79.253, subd. 2.

## DECISION

Because an employer is immune from suit under Minn.Stat. § 176.031 (1998), and the performance of duties does not transform an employer into a coemployee for the purposes of the WCA, we affirm the dismissal of the action against respondent Freeman. Furthermore, because Minn. Stat. § 79.253, subd. 2 (1998), does not create a private cause of action, the compensation insurers retain the exclusive remedy protections of Minn.Stat. § 176.031.

**Affirmed.**

AMUNDSON, Judge (concurring in part, dissenting in part)

### I. Common Law Remedy As Affected By Statute

The majority has crafted a well-reasoned affirmance of the district court's actions. I concur with much of its logic, but have reservations about not applying Minnesota's own exclusive remedy statute, Minn.Stat. § 176.031 (1998), and Minnesota's third-party liability statute, Minn.Stat. § 176.061 (1998), as written, but choosing instead to follow what it perceived to be a clear pattern in the statute granting immunity from suit to workers' compensation insurance carriers. Legislative trends should have no bearing on interpretation of the existing Minnesota statute. The district court and this court should refrain from speculating on what the Minnesota

legislature might do, and should apply the statute as written. The Minnesota act does not deprive an employee of the right to sue a person other than the employer. Only the legislature can grant such immunity and it is not apparent it has done so. The cloak of employer immunity should not be extended by implication to cover the Minnesota Workers' Compensation Assigned Risk Plan (MWCARP) to protect it from suits for its own negligence.

I would reverse the district court. I would further give a more charitable construction to the safety inspection statute, Minn.Stat. § 79.253, subd. 2 (1998), and hold that the MWCARP is not immune from a liability suit. In the alternative, we should remand the claim against MWCARP in order that discovery might proceed and the evidence be developed as to the acts and/or omissions of the MWCARP with respect to its duty to inspect the employer's premises under Minn. Stat. § 79.253.[1]

Can an employee's common law right against a third party be taken away by statute through any means other than direct enactment or necessary implication? *Rosenfield v. Matthews*, 201 Minn. 113, 275 N.W. 698 (1937), reminds us "[w]here an injury does not fall within the workmen's compensation act, the common-law remedy is not affected by it." *Id.* at 115, 275 N.W. at 699 (citation omitted). Minnesota law does not expressly alleviate the employee's common law right to assert a negligence claim against any person "other than the employer." Minn.Stat. § 176.061, subd. 5, the third-party liability provision, provides in relevant part:

> If an injury or death for which benefits are payable is caused under circum-

1. *See Sota Foods, Inc. v. Larson–Peterson & Assocs., Inc.*, 497 N.W.2d 276 (Minn.App. 1993), wherein the court affirmed the denial of summary judgment in favor of an engineering firm performing services on behalf of a municipality where the engineering firm claimed it was protected from suit under the doctrine of discretionary function immunity. The trial court had determined that the engineering firm was an independent contractor and not protected by municipal immunity. On appeal, this court affirmed the denial of the firm's motion for summary judgment, but found that there were material facts in dispute and, therefore, remanded to give the firm the chance to prove that it qualified for the immunity.

stances which created a legal liability for damages *on the part of a party other than the employer* \* \* \* legal proceedings may be taken by the employee or the employee's dependents \* \* \* against the other party to recover damages.

(Emphasis added.) A plain reading of the statute grants immunity to the employer and no one else. If the legislature intended to exclude the employer's compensation insurer from third-party liability, it could have done so.[2] Clearly, MWCARP is a "party other than the employer" subject to suit. We should not impose the words "and its workers' compensation insurance company" in the third-party liability section to grant immunity to a person where the legislature did not. *See Brandt v. Hallwood Management Co.*, 560 N.W.2d 396, 400 (Minn.App.1997) (reviewing court cannot supply that which the legislature omits or overlooks).

I am especially mindful that statutes in derogation of the common law must be strictly construed. At common law, an employee could sue his employer for negligence. In 1913, that right was taken away by the legislature and the compensation act was substituted. Of necessity, we strictly construe the compensation act. In *Donnelly v. Minneapolis Mfg. Co.*, 161 Minn. 240, 201 N.W. 305 (1924), an employee suffered an industrial disease which was not then among the enumerated diseases covered under the statute. The employer claimed that it was immune from a negligence suit. The court permitted the employee's common law negligence claim against the employer, holding:

> To the extent that the field is not touched by the [workers' compensation] statute, it must be considered that the legislature intentionally permitted it to remain under the common law so that either party, employer or employee, can resort to such action as it furnishes for the protection of a common law right.

*Id.* at 242, 201 N.W. at 306. The *Donnelly* court strictly construed the compensation act, adding:

> Courts *are not permitted by construction to carry a statute, particularly one in derogation of the common law, beyond its clearly defined scope.* It is for the legislature to limit or extend the operation of its enactments and, even though there are no self-contained limitations, *it would be judicial legislation to extend a statute beyond its subject matter.*

*Id.* at 245, 201 N.W. at 307, (emphasis added). The rule of strict construction precludes a grant of immunity to the MWCARP where the legislature did not.

The plain language of Minn.Stat. §§ 176.031 and 176.061 clearly and unambiguously grants immunity only to "the employer" and not to the workers' compensation insurer. While following the plain meaning rule and thereby subjecting the MWCARP to a negligence claim may produce policy questions for the legislature to answer, those questions are not for this court.

## II. Statutory Duty and Liability

The safety inspection statute, Minn.Stat. § 79.253, subd. 2, should be accorded a liberal construction because it protects the lives and health of workers. Under the law, a liberal construction is usually accorded statutes that are grounded on humane public policy. *Nordling v. Ford Motor Co.*, 231 Minn. 68, 76–77, 42 N.W.2d 576, 581–82 (1950). The legislative intent here is obvious—to safeguard the lives and limbs of employees working for Minnesota's employers who have been turned down by commercial carriers having highly unsafe working conditions or whose work is otherwise hazardous.

The majority relies on the *Modjeski* case, saying:

> There is within the statute a clear pattern to create an inseparable identity

2. *Kerner v. Employers Mut. Liability Ins. Co.*, 35 Wis.2d 391, 151 N.W.2d 72, 75–76 (1967).

between the employer and his insurer insofar as compensation and medical benefits for the injured employee are concerned.

*Modjeski v. Atwell, Vogel & Sterling, Inc.*, 309 F.Supp. 119, 122 (D.Minn.1969). In coming to its conclusion, the court in *Modjeski* relied on several areas within the Minnesota Workmen's Compensation Act (WCA) where insurers and employers are treated similarly. *Id.* at 121–22. Based on the guidance under *Modjeski* and implications from the statute, the majority holds that a compensation insurer is protected by the exclusive remedy provisions of the WCA. *Modjeski*, however, is clearly distinguishable. In *Modjeski*, suit was brought against a workers' compensation carrier and the inspection company hired by the insurer to inspect the elevator that failed, causing plaintiff decedent's death. *Id.* at 120. The issue was whether the compensation carrier could be a third-party tortfeasor against whom an action could be brought under Minn.Stat. § 176.061. *Id.* at 121. The court denied plaintiff's right to bring an action against the carrier after interpreting the WCA that was in effect in 1969, stating:

> The duty alleged to have been violated here is one that is required of the employer—providing a safe place to work. Even given its most liberal reading the complaint does not allege a violation of any additional duty owed by the insurer to the employee.

*Id.* at 122–23 (citations omitted).

In *Modjeski*, the plaintiff's theory of recovery was based upon the insurer's *right* to inspect the premises *contained in the insurance policy*. Appellant's claim here is based upon the *duty* to inspect imposed on the MWCARP in a statutory provision outside the WCA. Here, appellant alleges a breach of an additional duty owed by the insurer to the employee imposed by the legislature outside of the compensation act, a significant difference. The statutory duty of the MWCARP to conduct safety inspections, exists independently from the right to inspect reserved in its policy.

The mutual relinquishment of rights and liabilities is not transgressed by the imposition of liability upon a compensation carrier for a negligent inspection. With the adoption of the compensation act, the employee surrendered rights to a common law action, and the employer surrendered the defenses of no negligence, contributory negligence, or the negligence of a fellow servant. The workers' compensation insurance company was not a participant who surrendered claims or defenses.

One of the leading authorities in workers' compensation law has criticized decisions, such as *Modjeski*, which shy from imposing liability on a negligent compensation carrier on the theory that the reciprocity concept will be upset, observing:

> Nor does it necessarily follow that the carrier should be treated here exactly the same as the employer. The employer assumes compensation burdens in exchange for tort immunity. The carrier assumes compensation burdens in exchange for payment of an insurance premium. In the one respect that is decisive for present purposes, then, *their positions are not identical at all.*

2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation* § 72.96 (rev. ed.1995) (emphasis added).

Finally, of course, *Modjeski* is not binding on us. No federal district court's interpretation of a state statute binds this court and is only to be used as persuasive authority. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 n. 21, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997); 20 Am.Jur.2d *Courts* § 169 (1995).

Professor Larson notes that more than 20 appellate courts have concluded that a compensation carrier can be subject to an employee's third-party suit. Larson, *supra*, § 72.91. He suggests that each statute must be examined carefully because of the variability of language in the separate compensation acts. *Id.* at § 72.93. A decision construing a statute which equates a compensation carrier with the employer is of little assistance in construing a statute,

such as Minnesota's, which does not. *Cf. Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1330–31 (8th Cir.1985) (third-party liability section of Arkansas' act equates carrier with employer thereby immunizing carrier from liability suit). Moreover, Professor Larson cautions that "it would be rash at this time to announce that this or that is the majority rule." Larson, *supra,* § 72.91.

Following an analysis of the decisions on point, Professor Larson suggests that a distinction should be made between a carrier's function as a payor of benefits and services, on the one hand, and other functions it assumes in the way of direct or physical performance of services related to the act and concludes that for negligent performance of the latter, the carrier should be liable in tort as a "person other than the employer." *Id.* at § 72.97.

The supreme court of New York has construed statutory language in its act, which is virtually identical to Minnesota's act, and held that the workers' compensation insurer is *not* the alter ego of the employer entitled to immunity. *Cline v. Avery Abrasives, Inc.*, 96 Misc.2d 258, 409 N.Y.S.2d 91, 96 (1978). The language of New York's exclusive remedy statute is:

> The liability of an employer * * * shall be exclusive and in place of any other liability whatsoever to such employee * * * on account of such injury or death.

*Id.* at 93 (*cf.* Minn.Stat. § 176.031 which states, "The liability of an employer * * * is exclusive and in the place of any other liability to such employee, * * * on account of such injury or death."). The New York court framed the issue as follows:

> [T]he question is not whether an injured employee should be permitted to sue his employer's compensation carrier in common law negligence but, rather, whether the New York legislative intent, as expressed in this state's Workmen's Compensation Law, is to cloak the carrier with the employer's immunity. In short,

the decision must be based upon legislative, rather than judicial, policy.

*Id.* at 94–95.

The court examined the statute and found that the definition of "employer" did not include the insurer, and that the insurer was separately defined. The statute was clear and not ambiguous and, therefore, there was little room for judicial interpretation. The court concluded that the carrier could not be equated with the employer, stating "*courts must interpret the statute as it is written* and not extend it to what courts think it should be." *Id.* at 96 (emphasis added).

The New York court was unpersuaded by the insurer's threat that it would stop voluntary inspections if it were subjected to third-party suits, observing that the insurer had a financial self-interest to reduce accidents to reduce losses. The *Cline* court quoted favorably the argument of Professor Larson:

> Just how valuable is the insurer's safety inspection contribution if it is limited, casual, and supplemental? Would an all-or-nothing responsibility really be a bad thing? Might it not be desirable to be able to assume that anyone undertaking safety inspections around a plant will do a complete job and take the responsibility for it?

*Id.* at 98 (citing Larson, *Workmen's Compensation Insurer as Suable Third Party,* 1969 Duke L.J. 1117, 1141–42).

The Iowa Supreme Court similarly recognized an employee's right to maintain a common law negligence action against the compensation insurer for negligent inspection. *Fabricius v. Montgomery Elevator Co.*, 254 Iowa 1319, 121 N.W.2d 361 (1963). In response to the insurer's argument that it had only the same liability as that of the employer, the court held that an insurer did not enjoy immunity from its own torts. *Id.* at 365. The Iowa court declined the insurer's invitation to speculate what the intent of the Iowa legislature was, stating:

In this regard it is *the policy of this court not to interpret a statute as depriving one of a common law right unless the statute clearly so states.* The power to deprive one of a common law action is vested in the legislature under its police power upon declared public policy.

*Id.* at 366 (citations omitted) (emphasis added); *Rosenfield,* 201 Minn. at 116, 275 N.W. at 699 (existing common law right is not to be taken away by statute, unless by direct enactment or necessary implication).

The federal district court of North Carolina allowed an employee to sue a compensation carrier for negligent inspection in *Smith v. Liberty Mutual Ins. Co.,* 409 F.Supp. 1211 (M.D.N.C.1976), *aff'd,* 598 F.2d 616 (4th Cir.1979). The court analyzed the state compensation law and found no language which equated the insurer with the employer and declined to do so, stating:

> In considering a question such as the one raised in this case, it is especially important to heed the advice of late Justice Felix Frankfurther:
>
> > "One more caution is relevant *when admonished to listen attentively to what a statute says. One must also listen attentively to what it does not say."*

*Id.* at 1217 (quoting Frankfurther, *Some Reflections on the Reading of Statutes,* 47 Colum L.Rev. 526, 536 (1947)) (emphasis added).

> Applying Justice Frankfurther's admonition to the question of whether or not an injured employee can maintain a common law action for negligence against the employer's workmen's compensation carrier, leads to the straightforward and logical conclusion that such a cause of action is permitted under the terms of the North Carolina statute.

*Id.* at 1217. In this regard, Professor Larson's observation is helpful:

> To say that it is only equitable that the carrier should enjoy the employer's immunities to the extent he assumes his burdens may appeal to the court's sense

of symmetry and fairness. *The only catch is that this is not what the statute says.*

Larson, *supra,* § 72.96 (emphasis added).